IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| HWY 67 DEALERSHIP JV, | § § § § | |
| Plaintiff, | | |
| v. | § § § § § § § § | Case No. 3:22-cv-00784-L |
| DEPOSITOR'S INSURANCE COMPANY, | | |
| Defendant. | | |

**ORDER FOLLOWING *IN CAMERA* REVIEW**

This matter has been referred to the undersigned for pretrial management. *See* Order (ECF No. 126). Before the Court is Plaintiff's Opposed Motion to Compel Discovery Responses and Motion to Compel Documents Off Defendant's Second Amended Privilege Log Served May 17, 2023 (the "Motion to Compel") (ECF No. 33). Although the Court previously ruled on the majority of the issues presented in the Motion to Compel, it deferred ruling on whether certain documents withheld from production by Defendant constitute privileged attorney-client communications and/or protected work product. S*ee generally* Discovery Order (ECF No. 116). At the Court's request, Defendant submitted these documents for *in camera* review. Of note, Defendant has since notified the Court that it voluntarily produced Documents Bates-numbered HWY 67 00188-00194 from its Second Amended Privilege Log. *See* Jt. Report 1-2 (ECF No. 127). As such, the Court will not consider these documents in its review of the documents filed *in camera*.

1

## Background

This lawsuit arises from an April 27, 2020 hailstorm that damaged a building owned by Plaintiff HWY 67 Dealership JV in Arlington, Texas (the "Property"). *See* Sec. Am. Compl., *passim* (ECF No. 18).[1] The Property was insured under a Commercial Property Policy (the "Policy") issued by Defendant Depositors Insurance Company. *Id.* ¶ 7. In May 2020, Plaintiff submitted notice to Defendant under the Policy for property damage, and Defendant opened a claim (the "Claim"). *Id.* ¶ 8. Following investigation, Defendant adjusted the Claim and issued a payment for covered losses (minus the deductible) in June 2020. *Id.* ¶ 14. Dissatisfied with the adjustment, on or about August 27, 2020, Plaintiff invoked appraisal under the terms of the Policy and notified Defendant of same. *Id.* ¶ 16. Plaintiff received an appraisal award in or around August 2021. *Id.* ¶ 22 and Ex. A. Although Defendant made an additional payment thereafter, the amount of the appraisal award far exceeds the amount Defendant has paid on the Claim. *Id.* ¶ 24.

Plaintiff contends that Defendant underpaid its Claim and filed suit asserting breach of contract, violations of various provisions of the Texas Insurance Code, violations of the Deceptive Trade Practices Act, and breach of the common law duty of good faith and fair dealing/bad faith. *See id.* ¶¶ 28-55. Defendant denies Plaintiff's claims and contends it has paid what was owed under

---

[1] Plaintiff originally brought suit for both its property in Arlington, Texas, and its property located in North Richland Hills, Texas, but has since stipulated that it is not pursuing a claim for the property in North Richland Hills. *See* ECF No. 55-1.

2

the Policy, and any other damage was caused by a separate hailstorm that pre-dated the Policy period. *See* Def.'s Ans. & Defenses (ECF No. 19). Defendant also challenges the validity of the appraisal award and seeks to have it set aside, asserting, among other things, that the court appointing the umpire lacked jurisdiction, in violation of Policy provisions. *Id.*

The present dispute concerns approximately 213 documents that are listed on Defendant's Second Amended Privilege Log (ECF No. 34-1 at 129-38) and that Defendant contends are protected from disclosure by the attorney-client privilege or the work-product doctrine, or both. In its Motion to Compel, Plaintiff challenges Defendant's withholding of these documents and requests that the Court order Defendant to produce them (with the exception of payment information made to Defendant's attorneys and vendor TIN information). *See* Pl.'s Mot. to Compel 18-30. In response, Defendant argues that the "documents withheld were either created after [it] reasonably anticipated litigation or were for the rendition of professional legal services." Def.'s Resp. Br. 2 (ECF No. 62). The Court has reviewed the documents Defendant submitted *in camera*. The first set of documents includes communications and notes regarding communications between Defendant's employees and attorneys with the law firm of Walters, Balido & Crain. The second set of documents includes claim notes and reports. The documents include information on loss reserves that were determined, set, or discussed by Defendant in relation to the Claim *after* the date Defendant

anticipated litigation—which the parties sometimes refer to as "post-litigation" reserves.

## Legal Standards

Federal Rule of Civil Procedure 26(b)(1) sets forth the scope of discovery in civil cases pending in federal court.

> *Scope in General.* Unless otherwise limited by court order, . . . [p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1).

If a party fails to respond to a proper request for discovery, or if an evasive or incomplete response is made, the party requesting the discovery is entitled to file a motion to compel responses to interrogatories or production of documents after having made a good-faith effort to resolve the dispute by conferring first with the other party. Fed. R. Civ. P. 37(a).

Rule 26(b)(1), however, applies to nonprivileged matter, and a party withholding discovery on privilege grounds, "'must: (i) expressly make the claim; and (ii) describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the

4

claim.'" *Zenith Ins. Co. v. Tex. Inst. for Surgery, L.L.P.*, 328 F.R.D. 153, 161 (N.D. Tex. 2018) (quoting Fed. R. Civ. P. 26(b)(5)(A)). Rule 37 dictates that "an evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond." Fed. R. Civ. P. 37(a)(4).

## Analysis

Plaintiff contends that the documents at issue—including correspondence, claim notes and claim reports—"were prepared in the ordinary course of the claims adjusting process and are not protected by the attorney[-]client privilege" or the work-product doctrine and, therefore, "all such documents should be compelled." Pl.'s Mot. to Compel 30. Further, Plaintiff argues that "[t]he few entries on [Defendant's] Second Amended Privilege Log that mention the Walters[,] Balido & Crain law firm (and its attorneys), [Defendant's] coverage counsel, do not even suggest let alone establish how [or] why [] these communications were made in anticipation of this litigation." *Id.* at 29.

Finally, Plaintiff asserts that the entries in the Second Amended Privilege Log for the purported protected communications "are on their face inadequate" to establish they are protected by the attorney-client privilege or work-product doctrine because the Second Amended Privilege Log either "does not identify the author of each communication; . . . the names of all recipients of each document listed; . . . the document's subject matter[;] the purpose of its production of each communication[;] [or provide] a specific explanation of why the document is privileged or immune from discovery." *Id.*

5

In response, Defendant asserts that it withheld these documents from discovery under the attorney-client privilege because it was seeking "Walters, Balido & Crain's legal advice in anticipation of court proceedings." Def.'s Resp. Br. 13. According to Defendant, it "anticipated litigation by July 27, 2020, when it received Plaintiff's appraisal demand." *Id.* Thus, Defendant argues, all withheld communications between it and its attorneys at Walters, Balido & Crain are protected by the attorney-client privilege. *Id.* Defendant further contends that its withheld claim notes and reports were made in anticipation of litigation to allow it to defend the case and are, therefore, protected by the work-product doctrine. *Id.* at 14.

As evidentiary support, Defendant relies on the Second Amended Privilege Log and on the Declaration of Kenneth L. Bauer, the "Commercial Property Technical Director for the Nationwide family of companies," including Defendant, who "assisted with the [Claim]." Bauer Decl. ¶ 1 (ECF No. 63-1). In his Declaration, Mr. Bauer states that, after estimating damages for HVAC units and other building components to the Property, on June 26, 2020, Javier Rico (Defendant's claims adjuster) issued a payment on the Claim in the amount of $18,758.32 ($39,638.32 ACV minus $20,880 deductible). *Id.* ¶ 7.

On July 17, 2020, after receiving the payment, Plaintiff's public adjuster sent Mr. Rico an estimate that included not just the amount for damages to HVAC units and other building components, but for full replacement of the roof at the Property. *Id.* ¶ 8. In response, Mr. Rico noted in the activity log that he would retain an

engineer to inspect the Property and provide an opinion on the extent of storm damage to the roof. *Id.* On July 27, 2020, Mr. Rico received a letter from Plaintiff invoking appraisal under the Policy to determine the amount of loss and identifying The Insurance Appraisal Group as Plaintiff's appraiser. *Id.* The letter states Plaintiff's position that Defendant "undervalue[d] the total amount of loss," and that it is in "disagreement with [Defendant's] unilateral adjustment and determination of this claim and [Plaintiff's] damages/losses." *Id.* at Ex. A-1 (Doc. 63-2). Mr. Bauer asserts that on July 27, 2020, Defendant "anticipated litigation" after receiving Plaintiff's letter invoking appraisal. *Id.* ¶ 8. He also states that he participated in a conference on July 30, 2020, during which Defendant "made the determination that defense counsel would be retained [because it] anticipated litigation following receipt of the appraisal demand." *Id.* ¶ 9. He adds that Defendant "retained Walters, Balido & Crain in anticipation of needing representation in court proceedings[,]" and not "as part of an ordinary business purpose." *Id.* Finally, he states that the "claim notes and documents reflect that [Defendant] anticipated litigation as early as July 27, 2020, the date Plaintiff invoked appraisal, which prompted [Defendant] to retain defense counsel to prepare for a race to the courthouse and litigation." *Id.* ¶ 10.

Attached to Mr. Bauer's Declaration is e-mail correspondence between Mr. Rico and Brett Lochridge, who is Defendant's appraiser, dated July 31, 2020, in which Mr. Lochridge states that because the appraisal demand was sent by certified mail, he "is suspicious that they may have a race to the courthouse to get

7

an umpire appointed." *Id.* at Ex. A-2 (Doc. 63-3). In his response e-mail, Mr. Rico states that, "[i]n regards to [a] possible race to the courthouse, [Defendant] has already contacted outside defense counsel and [placed] them on standby." *Id.*

In its reply brief, Plaintiff reiterates the arguments in its Motion to Compel and also contends that, "[f]atal to [Defendant's] position, neither Bauer nor Kemp, address in their Declarations any document listed on [Defendant's] Second Amended Privilege Log and do not submit any evidence supporting the assertion of the attorney client privilege and/or the attorney work product privilege for any document identified on [it]." Pl.'s Reply Br. 1-2 (ECF No. 66).

In addition, Plaintiff challenges Defendant's contention that it anticipated litigation on July 27, 2020—the date it was notified that Plaintiff had invoked appraisal under the Policy—and contends that Defendant, therefore, is not entitled to claim work product protection or any other privilege with respect to these documents. *Id.* at 2-4. Although Plaintiff does not provide the Court with a date on which it believes Defendant reasonably anticipated litigation, it contends that "[r]andomly selecting a date in time that involves your insured invoking a contractual right under the policy and seeking counsel to 'race to the courthouse' to select an umpire is not how a party proves that a communication or document is protected by a privilege in this Court." *Id.* at 3. Plaintiff also asserts that "[a]ppraisal is not litigation— the appointment of an umpire by a Texas judge does not even require the filing of a lawsuit." *Id.* at 2 (citation omitted).

8

After considering the legal arguments and evidence submitted, including Mr. Bauer's Declaration and the exhibits to it, as well as the contents of the *in camera* documents, the Court finds that the objective date at which it can be said that Defendant had a reasonable anticipation of litigation was July 27, 2020, when it received notice that Plaintiff demanded an appraisal under the terms of the Policy. At that point, Plaintiff formally acknowledged that it disagreed with Defendant's "unilateral" adjustment of the Claim and believed Defendant undervalued the claim, and informed Defendant that their joint efforts to resolve the Claim were at an impasse. Defendant's anticipation of litigation and its retention of Walters, Balido & Crain at that point were reasonable because Plaintiff invoked appraisal on two large commercial buildings that Plaintiff estimated had a *vastly* larger scope of damages than Defendant had determined. From that point on, Plaintiff and Defendant became engaged in the adversarial process.

### A. Attorney-Client Privilege

The first category of documents presented for *in camera* review involves communications between Defendant and its attorneys at Walters, Balido & Crain, all dated on or after July 30, 2020, listed on Defendant's Second Amended Privilege Log as Documents Bates-numbered HWY 67 00836-00838; 00840; 00856; 00869-00871; 00984; 01002-01004; 01010-01014; 01039-01043; 01132-01133; 01136; 01144; and 01153.

The bedrock of all the privileged communications doctrines, the attorney-client privilege exists "to encourage full and frank communication between

9

attorneys and their clients." *United States v. El Paso Co.*, 682 F.2d 530, 538 (5th Cir.1982). While the attorney-client privilege extends to all situations in which counsel is sought on a legal matter, it protects "only those disclosures necessary to obtain informed legal advice which might not have been made absent the privilege." *Fisher v. United States*, 425 U.S. 391, 403 (1976). The privilege, therefore, does not protect documents and other communications simply because they result from an attorney-client relationship. *See Navigant Consulting, Inc. v. Wilkinson*, 220 F.R.D. 467, 477 (N.D. Tex. 2004) (Kaplan, J.). "Moreover, courts generally construe the privilege narrowly because assertion of privileges inhibits the search for truth." *Id.* (internal quotation marks and citation omitted). In the insurance context, the Fifth Circuit has held:

> The privilege extends to all communications between [the insurer] and the attorneys it retained for the purpose of ascertaining its legal obligations to [its insured]. The privilege is not waived if the attorneys perform investigative tasks provided that these investigative tasks are related to the rendition of legal services.

*Dunn v. State Farm Fire & Cas. Co.*, 927 F.2d 869, 875 (5th Cir. 1991).

In Texas,[2] attorney-client privilege extends to (1) confidential communications; (2) made for the purpose of facilitating the rendition of professional legal services; (3) between or among the client, lawyer, and their representatives; (4) where the privilege has not been waived. Tex. R. Evid. 503(b). The burden is on the party asserting the privilege to demonstrate how each

---

[2] Federal courts sitting in diversity apply state privilege law. *See* Fed. R. Evid. 501; *Dunn v. State Farm Fire & Cas. Co.*, 927 F.2d 869, 875 (5th Cir. 1991).

10

document or communication satisfies these elements. *Navigant Consulting*, 220 F.R.D. at 473. A general allegation of privilege is insufficient to meet this burden. *Id.* Instead, "a clear showing must be made which sets forth the items or categories objected to and the reasons for that objection. The proponent must provide sufficient facts by way of detailed affidavits or other evidence to enable the court to determine whether the privilege exists." *Lanelogic, Inc. v. Great Am. Spirit Ins. Co.*, 2010 WL 1839294, at *2 (N.D. Tex. May 6, 2010) (Kaplan, J.) (cleaned up). Although a privilege log and an *in camera* review of documents may assist the court in conducting its analysis, a party asserting the privilege still must provide "a detailed description of the materials in dispute and state specific and precise reasons for their claim of protection from disclosure." *Id.* (citation omitted). "[R]esort to an *in camera* review is appropriate only after the burdened party has submitted detailed affidavits and other evidence to the extent possible." *Id.* (cleaned up).

As previously explained, after considering the parties' legal arguments, Mr. Bauer's Declaration, and Defendant's Second Amended Privilege Log, at the Court's request, Defendant provided these documents for *in camera* review. Although the Court agrees with Plaintiff that the Second Amended Privilege Log lacks certain details that could have facilitated the privilege inquiry, the *in camera* review of the documents themselves reveals that the disputed documents consist primarily of e-mail communications between Plaintiff's claims adjuster (Mr. Rico) and retained counsel at Walters, Balido & Crain (including Randall G. Waters and

11

Brad Dickens). The e-mails, all dated on or after July 30, 2020, discuss Plaintiff's decision to invoke appraisal, legal options pertaining to the appraisal, the appointment of an umpire, Plaintiff's public adjuster's alleged bad faith claim, as well as strategies on how to proceed after the appraisal. The communications were for the rendition of legal services and clearly meant to be confidential and not shared with Plaintiff. Thus, the Court concludes that the following documents withheld by Defendant are protected by the attorney-client privilege: Documents Bates-numbered HWY 67 00836-00838; 00840; 00856; 00869-00871; 00984; 01002-01004; 01010-01014; 01039-01043; and 01132-01133.

With respect to Documents 01136, 01144, and 01153, however, the Court concludes that Defendant has failed to meet its burden. The privilege log states that these documents are "correspondence," and described as letters from Defendant's claims adjuster to retained counsel "regarding proceeding with the claim prepared in anticipation of litigation." These documents appear to be cover sheets only and no correspondence is attached. Thus, they are not privileged and Defendant must produce Documents HWY 67 01136, 01144, and 01153 to Plaintiff.

    B. *Work-Product Doctrine*

Under federal law,[3] the work product doctrine "protects from disclosure materials prepared by an attorney acting for his client in anticipation of litigation." *In re Grand Jury Proceedings*, 601 F.2d 162, 171 (5th Cir. 1979) (citing *Hickman*

---

[3] Federal law governs work product protection in federal courts. *See* Fed. R. Civ. P. 26(b)(3).

*v. Taylor*, 329 U.S. 495 (1947)). It "protects materials prepared by the attorney, whether or not disclosed to the client, and it protects material prepared by agents for the attorney." *Id.* (citation omitted). It does not, however, protect the underlying facts upon which an attorney relied. *E.g., In re Int'l Sys. & Controls Corp. Sec. Lit.*, 693 F.2d 1235, 1241 (5th Cir. 1982). Determining whether a document is prepared in anticipation of litigation is a "slippery task." *Lanelogic*, 2010 WL 1839294, at *5 (citations omitted). "A document need not be generated in the course of an ongoing lawsuit in order to qualify for work product protection." *Id.* However, "the primary motivating purpose" behind the creation of the document must be to aid in possible future litigation. *Id.* (quoting *In re Kaiser Aluminum & Chemical Co.*, 214 F.3d 586, 593 (5th Cir. 2000)). The "general rule is that litigation need not be imminent . . . as long as the primary motivating purpose behind the creation of the document was to aid in possible future litigation." *OneBeacon Ins. Co. v. T. Wade Welch & Assocs.*, 2013 WL 6002166, at *4 (S.D. Tex. Nov. 12, 2013) (cleaned up) (citation omitted).

      "The burden is on the party who seeks work product protection to show that the materials at issue were prepared by its representative in anticipation of litigation or for trial. A general allegation of work product protection is insufficient to meet this burden." *Dartson v. Villa*, 2018 WL 3528721, at *8 (N.D. Tex. Apr. 2, 2018) (Horan, J.) (citation omitted). Instead, "a clear showing must be made which sets forth the items or categories objected to and the reasons for that objection. The proponent must provide sufficient facts by way of detailed affidavits or other

13

evidence to enable the court to determine whether the documents constitute work product." *Id.* (cleaned up). Among the factors relevant to determining the primary motivation for creating a document are "the retention of counsel and his involvement in the generation of the document and whether it was a routine practice to prepare that type of document or whether the document was instead prepared in response to a particular circumstance." *Certain Underwriters at Lloyd's of London v. Lowen Valley View, LLC*, 2017 WL 2504954, at *2 (N.D. Tex. June 9, 2017) (Horan, J.) (cleaned up) (citation omitted). "If the document would have been created without regard to whether litigation was expected to ensue, it was made in the ordinary course of business and not in anticipation of litigation." *MM United Enter., Inc. v. AGCS Marine Ins. Co.*, 2013 WL 12126235, at *3 (N.D. Tex. June 18, 2013) (Stickney, J.) (citation omitted). In an insurance dispute, "the question of whether the documents are work product often depends on whether the insurer can point to a definite shift from acting in its ordinary course of business to acting in anticipation of litigation." *Lanelogic,* 2010 WL 1839294, at *5 (cleaned up) (citation omitted).

Provided for *in camera* review are Documents Bates-numbered HWY 67 00112-00346; 00112-00114; 00150; 00151-00155; 00158; 00159-00167; 00170; 00172-00173; 00227-00234; 00235; 00241-00243; 00245-00249; 00250-00251; 00291; 00292-00295; and 00296-00346. These documents contain claim information, notes, and reports created after July 27, 2020. Several records, including Documents Bates-numbered HWY 67 00115-00136, 00137, 00138, and

14

00139 have individual dates of logs describing actions taken by Defendant after July 27, 2020, at which time it reasonably anticipated litigation. Documents Bates-numbered HWY 67 00845-0051 are a report Defendant ran on July 30, 2020, also after the date at which time Defendant reasonably anticipated litigation. After reviewing these documents, the Court finds that they reflect a definite shift from acting in its ordinary course of business to acting in anticipation of litigation as of July 27, 2020.

The conclusory statement that Defendant anticipated litigation on July 27, 2020, standing alone, is not enough to show that it anticipated litigation and that the work-product doctrine should protect claim documents and reports prepared after this date. Here, however, the Court has more than Mr. Bauer's Declaration. It also has the contents of Plaintiff's letter invoking appraisal, *see* Bauer Decl. at Ex. A-1, and e-mail correspondence between Mr. Rico and Mr. Lochridge, who is Defendant's appraiser, dated July 31, 2020, in which Mr. Lochridge states that because the appraisal demand was sent by certified mail, he "is suspicious that they may have a race to the courthouse to get an umpire appointed." Bauer Decl. at Ex. A-2. In his response e-mail, Mr. Rico states that, "[i]n regards to [a] possible race to the courthouse, [Defendant] has already contacted outside defense counsel and [placed] them on standby." *Id.*

On this record, the Court finds that Defendant has met its burden, as the party invoking work-product protection, of showing that the "primary motivating purpose" behind the creation of the claim notes, claims reports, and/or

15

correspondence was to aid in possible future litigation as opposed to being made in the ordinary course of business. *See Omni Health Sols., LLC v. Zurich Am. Ins. Co.*, 2018 WL 4701791, at *4 (M.D. Ga. Oct. 1, 2018) (in coverage dispute involving hail damage to property, finding that the objective date at which it can be said that insurer had a reasonable anticipation of litigation was date when insured demanded an appraisal under the terms of the policy, and finding claims documents protected by work-product doctrine after that date); *compare with Lanelogic,* 2010 WL 1839294, at *6 (considering the insurance company's statement in the affidavit of a company representative that "the primary motivating purpose for the creation of such documents was to aid in possible future litigation" to be "self-serving" and finding that "other evidence suggests that litigation concerns were not the primary motivating purpose behind the creation of the documents at issue").

## Conclusion

The Court finds that attorney-client communications providing legal advice and documents prepared in anticipation of litigation on or after July 27, 2020—the date Plaintiff invoked appraisal under the Policy—are protected from discovery. And, other than "pre-litigation" loss reserves (loss reserves that were determined, set, or discussed by Defendant in relation to the Claim *prior* to the date Defendant anticipated litigation), which the Court previously ordered Defendant to produce in its September 11, 2023 Discovery Order, Plaintiff has not

16

pointed to any specific documents in the Second Amended Privilege Log that should not qualify for protection.

Accordingly, Documents Bates-numbered HWY 67 00836-00838; 00840; 00856; 00869-00871; 00984; 01002-01004; 01010-01014; 01039-01043; and 01132-01133 need not be produced, as they are protected by the attorney-client privilege.

Documents Bates-numbered HWY 67 00112-00346; 00112-00114; 00150; 00151-00155; 00158; 00159-00167; 00170; 00172-00173; 00227-00234; 00235; 00241-00243; 00245-00249; 00250-00251; 00291; 00292-00295; and 00296-00346 need not be produced, as they are protected by the work-product doctrine.

Defendant is **ORDERED** to produce, within ten (10) business days of this Order, Documents Bates-numbered HWY 67 01136, 01144, and 01153, as they are not protected from disclosure under either the attorney-client privilege or work-product doctrine.

**SO ORDERED.**

October 20, 2023.

REBECCA RUTHERFORD
UNITED STATES MAGISTRATE JUDGE