IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ALTON WAGGONER, LAFAYETTE "TERI" HEISHMAN, AND HANNAH LEBOVITS, AND KAWANA SCOTT, PLAINTIFFS, | § § § § § | |
| V. | § § | CASE NO. 3:22-CV-2776-E-BK |
| THE CITY OF DALLAS, TEXAS, EDGARDO GARCIA, IN HIS OFFICIAL CAPACITY, AND DAVID PUGHES, IN HIS OFFICIAL CAPACITY, DEFENDANTS. | § § § § § § | |

FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE

Pursuant to 28 U.S.C. § 636(b) and the district judge's referral order, Doc. 116, before the Court for findings and a recommended disposition are *Plaintiffs' Motion for Partial Summary Judgment on Count II & Permanent Injunction*, Doc. 100, and *City Defendants' Motion for Summary Judgment*, Doc. 103. As detailed herein, Defendants' motion should be **GRANTED**, and Plaintiffs' motion should be **DENIED AS MOOT**.

## I. BACKGROUND

### A. Factual Background

This case involves a First Amendment challenge seeking injunctive and declaratory relief as to an ordinance enacted by the City of Dallas (the "City") on October 26, 2022, codified as

§ 28-61.1 of the Dallas City Code (the "Ordinance").[1] Doc. 1; Doc. 88 at 1-3. Plaintiffs are Alton Waggoner, an unhoused veteran who solicits donations in the City; Lafayette "Teri" Heishman, a disabled veteran who has struggled with homelessness and currently resides in subsidized housing but solicits donations to make ends meet; and Hannah Lebovits, a public affairs professor at the University of Texas at Arlington who uses areas affected by the Ordinance for research and to fulfill her personal commitment to helping homeless individuals (collectively, "Plaintiffs").[2] Doc. 88 at 4-5. In addition to the City, Plaintiffs sue Dallas' (then) Chief of Police Edgardo Garcia and David Pughes, the Interim City Marshal of the Dallas City Marshal's office, in their official capacities (collectively, "City Defendants"). Doc. 88 at 4-5.

The Ordinance, enacted on October 22, 2022, prohibits any person from "stand[ing] or walk[ing] on a median that measures six feet or less, in areas where no median exists for roadways designated as divided roadways, or in an area designated as a clear zone." Doc. 88 at 5; Doc. 88-3 at 3. A "clear zone" is defined as

> the unobstructed, traversable area provided beyond the edge of the through travelled way for the recovery of errant vehicles. On a curbed street, the clear zone is the area four feet from the face of the curb. On an uncurbed street, the clear zone is 10 feet from the edge of the travel lane. A clear zone includes shoulders, bicycle lanes, and auxiliary lanes, except auxiliary lanes that function like through lanes. However, a clear zone does not include areas adjacent to the back of the curb where a paved sidewalk exists.

Doc. 88 at 5; Doc. 88-3 at 3. The Ordinance contains a variety of exceptions, including for individuals crossing the street in the most direct route possible, receiving or rendering aid in emergency situations, performing permitted road work, or with prior authorization from the City.

---

[1] On August 20, 2024, Plaintiff's filed their First Amended Complaint for Declaratory and Injunctive Relief, Doc. 88, [the "Operative Complaint"].

[2] Kawana Menchaca (formerly Scott), a political activist who frequently uses areas affected by the Ordinance as part of her advocacy, was terminated as a plaintiff pursuant to the Operative Complaint. Doc. 88.

Doc. 88-3 at 4. Violating the Ordinance is punishable by a fine of up to $500.00, and the City has amended § 13-10 of the City Code to give Dallas City Marshals authority to enforce it. Doc. 88 at 5; Doc. 88-3 at 4, 7-8.

### B. Procedural History

Plaintiffs assert that the Ordinance—both facially and as applied—constitutes an invalid content-based restriction on free speech or, alternatively, an invalid time, place, and manner regulation on content-neutral speech. Doc. 88 at 28-31. The gist of the Operative Complaint (like the initial complaint before it) is that the Ordinance targets poor people who solicit donations—so-called "panhandlers" and those who assist them—but, in an effort to conceal the true purpose of the Ordinance, the City manufactured a "public safety rationale" to avoid the appearance that the Ordinance violates the First Amendment. Doc. 88 at 2-3. Shortly after they filed their initial complaint, Plaintiffs filed a motion for preliminary injunction, Doc. 11, on which the undersigned conducted hearings on April 13 and April 27, 2023. On August 25, 2023, the Court denied Plaintiffs' motion for a preliminary injunction. *Waggoner v. City of Dallas*, No. 3:22-CV-2776-E-BK, 2023 WL 5516474, at *3-11 (N.D. Tex. July 20, 2023) (Toliver, J.), *adopted by* 2023 WL 5517220, at *1 (Brown, J.).

On November 18, 2024, Plaintiffs moved for partial summary judgment in their favor on their unconstitutional-as-applied claim and request for permanent injunction. Doc. 100. On the same date, City Defendants filed a motion for summary judgment on all Plaintiffs' claims. Doc. 103. The parties have timely filed their respective responses and replies. Doc. 109; Doc. 112; Doc. 118; Doc. 119.

## II. APPLICABLE LAW

### A.  42 U.S.C. § 1983

"Section 1983 provides a federal cause of action for the deprivation, under color of law, of a citizen's 'rights, privileges, or immunities secured by the Constitution and laws' of the United States." *Livadas v. Bradshaw*, 512 U.S. 107, 132 (1994).  To state a claim under § 1983, a plaintiff must allege facts showing he has been "deprived of a right 'secured by the Constitution and the laws' of the United States" and that the defendant was acting under color of state law.  *Flagg Brothers, Inc. v. Brooks*, 436 U.S. 149, 155 (1978).

### B.  First Amendment

The First Amendment to the United States Constitution protects an individual's right to freedom of expression through speech and public assembly.  *Virginia v. Black*, 538 U.S. 343, 358 (2003).  Laws that regulate such expression because of its message, idea, subject matter, or content are "presumptively invalid" as the "government has no power to restrict expression" on those bases.  *United States v. Stevens*, 559 U.S. 460, 468 (2010) (citation omitted).  *But see United States v. Alvarez*, 567 U.S. 709, 717 (2012) (noting that content-based restrictions on speech generally have been confined to a few "historic and traditional categories of expression long familiar to the bar," including obscenity, defamation, speech integral to criminal conduct, so-called "fighting words," child pornography, fraud, true threats, and "speech presenting some grave and imminent threat the government has the power to prevent").  The government's ability to restrict expressive activity in a public forum is thus very limited.  *Int'l Soc'y for Krishna Consciousness of New Orleans, Inc. v. City of Baton Rouge*, 876 F.2d 494, 497 (5th Cir. 1989) (citation omitted).

The Supreme Court of the United States has "identified three types of fora: the traditional public forum, the public forum created by government designation, and the nonpublic forum." *Frisby v. Schultz*, 487 U.S. 474, 479-80 (1988) (citation omitted).  Traditional public fora generally refer to places which "by long tradition or by government fiat have been devoted to assembly and debate." *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 45 (1983).  "Traditional public forums include sidewalks, streets, and parks that the public since time immemorial has used for assembly and general communication." *Fairchild v. Liberty Indep. Sch. Dist.*, 597 F.3d 747, 758 (5th Cir. 2010).

In evaluating a First Amendment challenge to a law, a court must first determine whether the targeted speech is protected and, if so, what level of judicial scrutiny applies. *Sorrell v. IMS Health Inc.*, 564 U.S. 552, 557 (2011).  "The appropriate level of scrutiny is initially tied to whether the statute distinguishes between prohibited and permitted speech on the basis of content." *City of Baton Rouge*, 876 F.2d at 497 (quoting *Frisby*, 487 U.S. at 481).  If the law is content based, it is subject to strict scrutiny and, thus, "must be necessary to serve a compelling state interest and be narrowly drawn to achieve that end." *Id.*  Conversely, intermediate scrutiny applies to "content-neutral regulations of time, place, and manner of expression [which] are enforceable if they are narrowly tailored to serve a significant government interest, and leave open ample alternative channels of communication." *Id.* (citation omitted).

Second, the court must assess whether the challenged law survives the appropriate level of scrutiny. *Id.*  In a case involving a content-neutral regulation, while the law "must be narrowly tailored to serve the government's legitimate, content-neutral interests . . . it need not be the least restrictive or least intrusive means of doing so." *Doe I v. Landry*, 909 F.3d 99, 111 (5th Cir. 2018) (quoting *Ward v. Rock Against Racism*, 491 U.S. 781, 798 (1989)).  Rather, the

"narrowly tailored" requirement is satisfied "[s]o long as the means chosen are not substantially broader than necessary to achieve the government's interest." *Ward*, 491 U.S. at 800. Thus, a "regulation will not be invalid simply because a court concludes that the government's interest could be adequately served by some less-speech-restrictive alternative." *Id.*

### C. Summary Judgment

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quoting a since-amended version of FED. R. CIV. P. 56(c)); FED. R. CIV. P. 56(a), (c). A dispute regarding a material fact is "genuine . . . if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (cleaned up). When ruling on a motion for summary judgment, the court is required to view all facts and inferences in the light most favorable to the nonmoving party and resolve all disputed facts in favor of the nonmoving party. *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005). Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence showing the existence of a genuine dispute of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

But "a party opposing summary judgment may not rest on mere conclusory allegations or denials in its pleadings." *Smith v. Reg'l Transit Auth.*, 827 F.3d 412, 417 (5th Cir. 2016) (cleaned up). Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence. *Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir.

1994).  Indeed, the party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his claim.  *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998).  Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment.  *Id.*

### D.  Permanent Injunctive Relief

A plaintiff must establish four elements to secure a permanent injunction: "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction."  *eBay, Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006).  A permanent injunction "is an extraordinary and drastic remedy, not to be granted routinely, but only when the movant, by a clear showing, carries the burden of persuasion."  *Holland Am. Ins. Co. v. Succession of Roy*, 777 F.2d 992, 997 (5th Cir. 1985).  To warrant entry of a permanent injunction, Plaintiff must demonstrate actual success on the merits of its due process claim.  *Amoco Prod. Co. v. Village of Gambell*, 480 U.S. 531, 546 n.12 (1987).

In the First Amendment context, however, a court need not analyze the existence of an irreparable injury or whether the public interest would be disserved because these factors are presumed and weigh in favor of an injunction.  *See Elrod v. Burns*, 427 U.S. 347, 373 (1976) ("The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury."); *Texans for Free Enter. v. Tex. Ethics Comm'n*, 732 F.3d 535, 539 (5th Cir. 2013) ("Injunctions protecting First Amendment freedoms are always in the public interest.") (cleaned up).  Accordingly, the following analysis addresses only whether Plaintiffs

have shown that other remedies available at law are inadequate to compensate for injuries

suffered and that the balance of hardships is in their favor.

### E.  Declaratory Relief

Under the Declaratory Judgment Act, "[i]n a case of actual controversy within its

jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations

of any interested party seeking such declaration, whether or not further relief is or could be

sought."  28 U.S.C § 2201(a).  However, the Declaratory Judgment Act "does not of itself confer

jurisdiction on the federal courts," and, thus, without an underlying federal claim, a claim for

declaratory relief must fail.  *Ariyan, Inc. v. Sewerage & Water Bd. of New Orleans*, 29 F.4th 226,

232 (5th Cir. 2022) (quoting *Jolly v. United States*, 488 F.2d 35, 36 (5th Cir. 1974)) (cleaned up).

## III. ANALYSIS

The Court notes that the parties rely on essentially the same evidence and arguments of

law presented at the hearings on the motion for preliminary injunction and which undergirds the

substance of the 2023 FCR.  Thus, the Court adopts and fully incorporates by reference herein

the July 20, 2023 *Findings, Conclusion and Recommendation of the United States Magistrate

Judge*, Doc. 60 ("2023 FCR"), and the *Order Accepting Findings, Conclusion and

Recommendation of the United States Magistrate Judge*, Doc. 65 (accepting without change the

2023 FCR, Doc. 60, after conducting a *de novo* review the portions to which the parties

objected).[3]

---

[3] *Cf.* FED. R. CIV. P. 65(a)(2) ("Before or after beginning the hearing on a motion for a
preliminary injunction, the court may advance the trial on the merits and consolidate it with the
hearing.  Even when consolidation is not ordered, evidence that is received on the motion and
that would be admissible at trial becomes part of the trial record and need not be repeated at trial.
But the court must preserve any party's right to a jury trial.")

On the record before the Court and for the same reasons set out in the 2023 FCR, the Court again finds:

- Plaintiffs have established that they continue to engage in activities now prohibited by the Ordinance; accordingly, they have a credible, imminent fear of prosecution and, thus, have standing. *See* Doc. 60 at 7-10.

- The Ordinance is content-neutral in that it prohibits all persons, with some narrowly drawn, non-discriminatory exceptions, from standing or walking on designated medians and clear zones, and there is insufficient evidence that the City had "an impermissible purpose or justification" for enacting the Ordinance, and intermediate scrutiny thus applies; thus, the constitutionality of the Ordinance is assessed through the lens of intermediate scrutiny. *See* Doc. 60 at 10-18.

- The Ordinance is sufficiently narrowly drawn, and the City has met its burden of producing evidence in support of its proffered justification for the Ordinance, including objective evidence showing that the Ordinance serves the City's interest in public safety. *See* Doc. 60 at 18-22.

- The Ordinance leaves open several alternative areas where members of the public may engage in all manner of speech such as sidewalks, public parks, and medians wider than six feet. *See* Doc. 60 at 22-23.

- The Ordinance, therefore, does not violate the First Amendment of the United States Constitution. *See* Doc. 60 at 23.

Because Plaintiffs do not offer any evidence not previously considered by the Court that would warrant different findings and conclusions than those set out in the 2023 FCR, the Court further finds that there remains no genuine issues of material fact. Therefore, the City

Defendants are entitled to summary judgment in their favor as a matter of law on each of Plaintiff's claims.

## IV. CONCLUSION

For the foregoing reasons, *City Defendants' Motion for Summary Judgment*, Doc. 103, should be **GRANTED**, and *Plaintiffs' Motion for Partial Summary Judgment on Count II & Permanent Injunction*, Doc. 100, should be **DENIED AS MOOT**. Accordingly, the Plaintiff's claims should be **DISMISSED WITH PREJUDICE**. As no claims will remain pending, the Clerk of Court should be directed to close this case.

**SO RECOMMENDED** on August 29, 2025.


RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE


## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of this report and recommendation will be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). An objection must identify the finding or recommendation to which objection is made, state the basis for the objection, and indicate where in the magistrate judge's report and recommendation the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996), *modified by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections to 14 days).